CAROLINA PAPER COMPANY, INC., PLAINTIFF v. EVERETT B. BOUCHELLE, T/A BOUCHELLE ENTERPRISES, DEFENDANT, AND W. P. CHERRY & SON, INC., GARNISHEE

No. 27

(Filed 13 March 1974)

1. Garnishment § 2— invalid service of process — void judgment

If service of process on the employee of the corporate garnishee was insufficient, the court did not acquire jurisdiction over the garnishee, the conditional and final judgments against the garnishee are void, and a motion in the cause to correct the record is the appropriate action.

2. Garnishment § 2; Process § 12— garnishment proceedings — agent for service of process

An employee of a corporate garnishee was an "agent" authorized to receive process in a garnishment proceeding within the purview of G.S. 1-440.26(a) where the employee was the son-in-law of the president and owner of the corporate garnishee, he had been working for the corporation for two months, he was made president of a subsidiary shortly after beginning his employment with the corporation, he was 38 years old with 15 years of business experience, he was in charge of the corporation's office and some 17 employees while its

Paper Co. v. Bouchelle

president and its bookkeeper were away, and neither was in the office when process was served on the employee.

Justice LAKE dissents.

ON *certiorari* to review the decision of the Court of Appeals reported in 19 N.C. App. 697, 200 S.E. 2d 203 (1973), which affirmed the order of *Abernathy, J.*, at the 2 April 1973 Regular Session of MECKLENBURG District Court.

The undisputed or stipulated facts show that in 1970 defendant Everett B. Bouchelle, trading as Bouchelle Enterprises (hereinafter referred to as Bouchelle), and garnishee W. P. Cherry & Son, Inc. (hereinafter referred to as Cherry) were working in Statesville, North Carolina, on a construction job involving the construction of apartment buildings. Cherry was one of the general contractors on the project, and Bouchelle was a subcontractor under Cherry. Bouchelle was in the plastering business and purchased the materials for this project from plaintiff, a North Carolina corporation with its principal place of business in Mecklenburg County.

On 15 October 1970 plaintiff instituted suit in Mecklenburg District Court against Bouchelle, alleging in its complaint that Bouchelle was indebted to plaintiff in the amount of $12,004.93 with interest from 16 September 1970. Plaintiff also instituted supplemental attachment and garnishment proceedings against Cherry on 15 October 1970 by posting bond and filing the required garnishment papers naming Cherry as garnishee. On 16 October 1970, J. D. Morris, a deputy sheriff from the Mecklenburg County Sheriff's Department, delivered copies of the summons, notice of levy, and order of attachment to the office of Cherry in Charlotte. Deputy Morris stated that when he arrived at the office of Cherry, neither W. P. Cherry, Jr., the president and owner of Cherry, nor Clifford Ambrose, the company's bookkeeper, was in the office, and therefore Morris served copies of the summons, notice of levy, and order of attachment on William F. Lyon. In acknowledging receipt of the garnishment papers for Cherry, Lyon signed his name and then beside his signature wrote "purchasing agent."

The summons to Cherry noted among other things that within twenty days after service of the summons, Cherry was required to file a verified answer in the office of the clerk of the Superior Court in Mecklenburg County showing whether

Cherry was indebted to Bouchelle or had any property in its possession belonging to Bouchelle, and notifying it that unless such answer was filed a conditional judgment would be taken against it for the full amount for which plaintiff prayed judgfent against Bouchelle, plus interest and costs. Cherry failed to answer.

Plaintiff's action against Bouchelle was tried on the merits before Judge Horner without a jury at the 24 April 1972 Civil Jury Term of the Mecklenburg District Court. Judge Horner found that Bouchelle was indebted to plaintiff in the amount of $10,404.87 for sheetrock and other materials plaintiff had furnished Bouchelle in connection with the construction project, and entered judgment against Bouchelle in the amount of $10,404.87 with interest from 16 September 1970 and costs. This judgment also stated:

> "IT IS FURTHER ORDERED that this action remain on the active docket for such further proceedings as may be appropriate under the Supplemental Attachment Proceedings instituted herein, including such proceedings as may be appropriate as against W. P. Cherry & Son, Inc. [Garnishee herein, who was served with a Summons and Notice] of Levy in October, 1970."

On 26 April 1972, upon application of plaintiff, a conditional judgment was entered against Cherry by the clerk of the Mecklenburg Superior Court for $10,404.87 with interest from 16 September 1970 and costs. The conditional judgment contained the following notice:

> "YOU ARE HEREBY NOTIFIED to appear before me, at the Offices of the Superior Court in the Mecklenburg County, North Carolina, Courthouse not later than ten (10) days after a copy of this notice has been served upon you, and to show cause, if any there be, as to why the foregoing Conditional Judgment shall not be made final."

A copy of this conditional judgment and the accompanying notice was served upon Cherry on 28 April 1972 by delivery of the same to its president, W. P. Cherry, Jr., by Donald W. Stahl, Sheriff of Mecklenburg County.

Cherry failed to take any action, and after the expiration of more than ten days plaintiff moved before the clerk that the conditional judgment against Cherry be made final. Plain-

tiff's motion was allowed and final judgment against Cherry was entered on 10 May 1972 for $10,404.87 with interest from 16 September 1970 and costs.

On 1 December 1972 the Sheriff of Mecklenburg County came by Cherry's office with an order of execution. W. P. Cherry, Jr., then immediately turned over the copies of the garnishment papers and the conditional judgment to an attorney. This attorney on 1 December 1972 filed a motion in Mecklenburg District Court, pursuant to G.S. 1A-1, Rule 60(b)(4), to set aside the final judgment against Cherry on the ground that such judgment was void because of insufficiency of the service of process of the garnishment papers on 16 October 1970. After a hearing conducted on 2 April 1973, Chief District Judge Abernathy by an order dated 10 April 1973 denied Cherry's motion.

Cherry appealed from this order. The Court of Appeals in an opinion by Judge Hedrick, concurred in by Chief Judge Brock and Judge Britt, affirmed. We allowed *certiorari* on 9 January 1974.

*Ruff, Bond, Cobb, Wade & McNair by Thomas C. Ruff; and John E. McDonald, Jr., for movant-garnishee, W. P. Cherry & Son, Inc., appellant.*

*Harkey, Faggart, Coira & Fletcher by Harry E. Faggart, Jr., Francis M. Fletcher, Jr., and Philip D. Lambeth for plaintiff appellee.*

MOORE, Justice.

G.S. 1-440.21 states that "garnishment is not an independent action but is a proceeding ancillary to attachment and is the remedy for discovering and subjecting to attachment . . . any indebtedness to the defendant and any other intangible personal property belonging to him. . . ." This same section states that "a garnishee is a person, firm, association, or corporation to which such a summons as specified by § 1-440.23 is issued."

After defining garnishment, our statutes set forth the procedures to be followed in garnishment proceedings. G.S. 1-440.22 provides that "a summons to garnishee may be issued (1) at the time of the issuance of the original order of attachment, by the court making such order, or (2) at any

time thereafter prior to judgment in the principal action, by the court in which the action is pending."

G.S. 1-440.25 in pertinent part provides that "the levy in all cases of garnishment shall be made by delivering to the garnishee, or . . . some representative of a corporate garnishee designated by § 1-440.26, a copy of each of the following: (1) the order of attachment, (2) the summons to garnishee, and (3) the notice of levy." ·

G.S. 1-440.26 pertains to the service of garnishment papers when the garnishee is a domestic corporation. It provides that in such cases "the copies of the process listed in § 1-440.25 may be delivered to the president or other head, secretary, cashier, treasurer, director, managing agent or local agent of the corporation."

G.S. 1-440.27 provides that "when a garnishee, after being duly summoned, fails to file a verified answer as required, the clerk of the court shall enter a conditional judgment for the plaintiff against the garnishee for the full amount for which the plaintiff shall have prayed judgment against the defendant, together with such amount as in the opinion of the clerk will be sufficient to cover the plaintiff's costs. . . . The clerk shall thereupon issue a notice to the garnishee requiring him to appear not later than ten days after the date of service of the notice, and show cause why the conditional judgment shall not be made final. If, after service of such notice, the garnishee fails to appear within the time named and file a verified answer to the summons to the garnishee, or if such notice cannot be served upon the garnishee because he cannot be found within the county where the original summons to such garnishee was served, then in either such event, the clerk shall make the conditional judgment final."

Assuming proper service was had on Cherry, plaintiff followed the statutory procedures set out above. Therefore, the sole question presented by this appeal is whether W. F. Lyon, an employee of the garnishee Cherry, was a proper person for delivery of process in this proceeding under the terms of G.S. 1-440.26(a).

Initially it should be noted that former G.S. 1-97, concerning service of process generally, provided for the delivery of summons in an action against a corporation "to the president

or other head of the corporation, secretary, cashier, treasurer, director, managing or local agent thereof." G.S. 1-97 (1). This is substantially the same language now contained in G.S. 1-440.26 (a) as to service on a corporate garnishee. When the North Carolina Rules of Civil Procedure were enacted in 1967, G.S. 1-97 was repealed and replaced by G.S. 1A-1, Rule 4 (j) (6) (a). However, G.S. 1-440.26 (a) has not been changed and continues to govern service of process in garnishment proceedings. Hence, Rule 4 (j) (6) (a) has no application to this case. Nevertheless, we do note that service in this case on Lyon would have been valid under Rule 4 (j) (6) (a), since under that rule service may be had on a corporation by leaving a copy of the summons and complaint in the office of the president of the corporation with the person "who is apparently in charge of the office." The testimony shows that Lyon was not only apparently in charge but that he was actually in charge of the office when process was served upon him.

Because the language used in former G.S. 1-97 (1) was the same as now appears in G.S. 1-440.26 (a), cases decided under former G.S. 1-97 (1) are still pertinent. In defining the term "agent" as used in the statute, Justice Hoke in *Whitehurst v. Kerr,* 153 N.C. 76, 68 S.E. 913 (1910), stated:

> " . . . [T]he cases will be found in general agreement on the position that in defining the term agent it is not the descriptive name employed, but the nature of the business and the extent of the authority given and exercised which is determinative, and the word does not properly extend to a subordinate employee without discretion, but must be one regularly employed, having some charge or measure of control over the business entrusted to him, or of some feature of it, and of sufficient character and rank as to afford reasonable assurance that he will communicate to his company the fact that process has been served upon him. [Citations omitted.]"

See also *Heath v. Manufacturing Co.,* 242 N.C. 215, 87 S.E. 2d 300 (1955); *Mauney v. Luzier's, Inc.,* 212 N.C. 634, 194 S.E. 323 (1937); *Lumber Co. v. Finance Co.,* 204 N.C. 285, 168 S.E. 219 (1933).

The definition given in *Whitehurst v. Kerr, supra,* was approved in *Service Co. v. Bank,* 218 N.C. 533, 11 S.E. 2d 556 (1940), where Justice Barnhill (later Chief Justice) also stated:

---

---

" . . . A local agent is one who stands in the shoes of the corporation in relation to the particular matters committed to his care. He must be one who derives authority from his principal to act in a representative capacity . . . and he must represent the corporation in its business in either a general or limited capacity. . . . Thus the question is to be determined from the nature of the business and the extent of the authority given and exercised. *Lumber Co. v. Finance Co.*, 204 N.C., 285, 168 S.E., 219. It is merely a question whether the power to receive service of process can reasonably and fairly be implied from the character of the agency in question. [Citations omitted.]

"In the absence of any express authority the question depends upon a review of the surrounding facts and upon the inference which the court might properly draw from them."

[1]   The record in this case shows service on Lyon; however, if such service was insufficient because not authorized by G.S. 1-440.26(a), the court never acquired jurisdiction over Cherry and the conditional and final judgments against it, though apparently regular, would be void, and a motion in the cause to correct the record is the appropriate action. See G.S. 1A-1, Rule 60(b). Such void judgment is "without life or force, and the court will quash it on motion, or *ex mero motu." Carter v. Rountree,* 109 N.C. 29, 13 S.E. 716 (1891). See *Mills v. Richardson,* 240 N.C. 187, 81 S.E. 2d 409 (1954).

Lyon was not the president or the head of Cherry, nor was he secretary, cashier, treasurer, or director. The question then becomes: Was he such an agent, "regularly employed, having some charge or measure of control over the business entrusted to him, or of some feature of it, and of sufficient character and rank as to afford reasonable assurance that he will communicate to his company the fact that process has been served upon him?" *Whitehurst v. Kerr, supra.*

Mr. Cherry testified that when the process was served on William F. Lyon on 16 October 1970, he was informed that a garnishee paper of some sort from plaintiff had been received in the company's office; that he had Mr. Bruce Boney of Lawyers Title Company contacted and that "he assumed that he had cleared up the paper"; that he personally received the papers marked "conditional judgment" in April 1972 but did

not turn them over to an attorney at that time because he "did not realize that [he] was supposed to do anything" about it; that he did not look for the summons and notice when he got the conditional judgment; and that he did not know that final judgment had been taken until execution was served on him in December 1972. Mr. Cherry further testified that after the execution was served, he looked and found in his office copies of the summons and notice of levy that had been served on Lyon on 16 October 1970, and that he now knows he should have turned these papers over to his attorney but he did not do so because he thought the matter was between plaintiff and defendant Bouchelle.

Thus, Cherry, through its president and owner, had notice that garnishment papers had been served on Lyon, that a conditional judgment had been rendered against Cherry for $10,404.87 plus interest and costs, and that this judgment would become final unless Cherry answered within ten days and showed that it was not indebted to Bouchelle. Despite this notice Cherry's president and owner did nothing when originally informed of the garnishment proceeding except contact Mr. Boney of Lawyers Title Company, who in turn apparently did nothing with respect to plaintiff's proceeding. When notice of the conditional judgment was served on him, again Mr. Cherry ignored the notice and did nothing. It is difficult to understand how an experienced businessman could be so lax in the conduct of his company's affairs.

[2] The garnishment papers were served on Lyon. He was the son-in-law of W. P. Cherry, Jr., the president and owner of the garnishee; he was 38 years of age with 15 years' business experience, during which time he served as manager of a department store where he had had experience with garnishment proceedings. Mr. Cherry had recently persuaded Lyon to accept a position with his company, and shortly after beginning his employment with Cherry, Lyon was made president of Edgewood Components, a subsidiary of Cherry. On 16 October 1970, the date of the service of the garnishment papers, Lyon had been an employee with Cherry for two months. According to the testimony of both Lyon and the company's bookkeeper, Mr. Ambrose, when Mr. Cherry and Mr. Ambrose were out of the office, Lyon was in charge of the company's office where some 17 other employees worked. When process was served in this case, neither Mr. Cherry nor Mr. Ambrose was in the office.

Lyon acknowledged receipt of the process and signed as "purchasing agent" since he had done some purchasing, although usually under the direction of Mr. Cherry. The deputy sheriff who served the papers in question had served other papers on the garnishee over the years by leaving them with the person in charge of the office since Mr. Cherry was rarely in. The company had been sued many times and no question had ever been raised about the process being left with the person in charge.

Lyon testified that he thought he gave the papers to Mr. Cherry or to Mr. Ambrose, but he was not sure. Usually when he received papers for Cherry he would place them on Mr. Cherry's desk since he worked closely with him. Mr. Cherry had never told him that he should not receive suit papers.

Under the circumstances in this case it can reasonably and fairly be implied that Lyon was an agent of Cherry of sufficient character and rank as to afford reasonable assurance that he would—as he in fact did—communicate to his company that process had been served upon him. We hold, therefore, that Lyon was an agent authorized to receive process and that service upon him was valid under G.S. 1-440.26 (a).

The decision of the Court of Appeals affirming the order of Judge Abernathy denying Cherry's motion to strike the final judgment against it is affirmed.

Affirmed.

Justice LAKE dissents.